## UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| KINGSLEY OGBOGU, | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. |
| | § | |
| vs. | § | _____ |
| | § | |
| WILLIS TOWERS WATSON | § | |
| US LLC, | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

The plaintiff,  Kingsley Ogbogu, ("Plaintiff" or "Ogbogu"), complains of Watson Towers Watson US, LLC ("Defendant" or "WTW"), as follows:

## VENUE AND JURISDICTION

1. Ogbogu is a citizen of the United States and a resident of the State of Texas.

2. Ogbogu was a Benefits Advisor for WTW and venue is proper because he has been subjected to unlawful employment practices committed in the State of Texas, Northern District, Dallas Division.

3. WTW is a global advisory, broking, and solutions company that provides products and services to clients to help them manage risk, cultivate talent, and optimize benefits, while protecting and strengthening institutions and individuals.

4. WTW is a foreign limited liability company, conducting business in Texas at 250 E. Arapaho Road, Richardson, Texas, in the Northern District, and elsewhere, and this action accrued in whole or in part in the Northern District.

5. WTW may be served with process by serving its registered agent in Texas: Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(4), and 28 U.S.C. §1337. The complaint seeks declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202.

7.  Jurisdiction of this Court is also invoked pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et. seq.,* as amended by the ADAAA ("ADA").  This is a proceeding for legal and equitable relief available to secure the rights of Ogbogu under the ADA.

8.  Jurisdiction of this Court is also invoked pursuant to the Family Medical Leave Act of 1993 ("FMLA") 28 U.S.C. §1331 and 29 U.S.C. § 2601 *et seq*. This is a proceeding for legal and equitable relief available to secure the rights of Ogobu under the FMLA.

9.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(4), and 28 U.S.C. §1337.   This is a suit authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. as amended by the Civil Rights Act of 1991 (Title VII).

10. This is a suit authorized and instituted pursuant to 42 U.S.C. § 1981.

11. This is a proceeding for compensatory and punitive damages, injunctive and other legal and equitable remedies available to secure the rights of Ogbogu under the ADA and the Title VII. It is brought to prevent WTW from maintaining policies, practices, customs or usages of discriminating against Ogbogu in regard to terms, conditions, and privileges of employment in violation of these statutes.

12. This matter in controversy exceeds, exclusive of interest and costs, the minimum jurisdictional limits of this Court.

## STATEMENT OF FACTS

13. Ogbogu is African American and has cerebral palsy, which affects his ability to move and maintain balance and posture.

14. Ogbogu commenced employment at WTW in September 2013 as a seasonal Benefits Advisor in the Richardson, Texas, call center and he worked until January 4, 2014. Ogbogu was rehired June 30, 2014 and worked until November 16, 2014. Ogbogu was rehired again on July 11, 2016 and worked continuously until his termination on December 12, 2018. Obogu worked in the Affordable Care Act Department for WTW.

15. WTW Mobile Device policy prohibits the use of cell phones on the call floor to protect the privacy of information of consumers using the call center. However, it is not uncommon to observe employees and Supervisors using cell phones on the call floor

16. In the summer of 2017, Ogobu reported to Valerie Lucas ("Lucas"), Supervisor (African-American). Ogbogu requested a reasonable accommodation for his mobility impairments relating to his use of Dart paratransit to get to and from work. Specifically, he asked to use his cell phone from 5:15 p.m. to 5:30 p.m. each day so that he would be available to communicate with Dart paratransit dispatchers to ensure timely and safe pick-up at the end of the day. Lucas told Ogobu that she would ask Employee Relations ("ER") HR Partner – Texas Crystal Holliday ("Holliday") (African-American), about whether the request would be granted.

17. After several weeks, Ogbogu had not heard back from Holliday and he followed up with Lucas. On July 17, 2017, he was told by Lucas that the request for accommodation was denied by Holliday because it would be "special treatment" if he could use a cell phone on the floor when other employees could not. When Obgobu questioned Lucas why this could not be granted as a reasonable accommodation, she stated that if he was allowed to use the

cell phone it would be "special treatment" and that he needed to "deal with it."  Lucas said that other employees were upset that he might be granted an accommodation to let him use his cell phone.

18. Ogbogu then went to Cathy Isham ("Isham"), Individual Exchange Employee Relations Lead (Causcasian) complaining about the denial of the accommodation. Isham reversed the decision and approved the accommodation on July 18, 2017. However, subsequently Ogbogu started being subjected to retaliation. A couple of days after the accommodation was granted, Brandon Morrison ("Morrison"), POD Manager (Caucasian) and Carlos (last name unknown), POD Manager (Hispanic), called Obogu into a meeting with Lucas and Carlos, and told him that they were not happy he had gone to ER.

19. On August 11, 2017, in a one-on-one meeting, Lucas told Obugu that "I don't understand why people like you are in this department." In a team huddle the next week, Lucas repeated this statement, saying "I don't see why certain people are in the IFP department," and then looking over at Ogubu in an intimidating manner.

20. In September or October 2017, Ogobu was told by Margie Young, Supervisor (African-American), that in a meeting with all of the Supervisors, Morrison stated they needed to write up Ogbogu every chance they get.

21. About two or three months after his initial accommodation request, Ogbogu began reporting to Randolph St. George ("St. George"), Supervisor (Caucasian). St. George engaged in discriminatory and harassing behavior toward Ogbogu, such as constantly following him to the restroom and breakroom. This surveillance caused Obogu stress which negatively impacted his blood pressure and cerebral palsy.

22. On November 7, 2017, Ogbogu sent Ben Miller ("Miller"), Managing Director (Caucasian) and Michael Kracht ("Kracht"), Director of Operations (Caucasian) an email asking for

them to address constant and excessive harassment he was receiving from St. George. Ogbogu noted that he had raised issues with Holliday that non-disabled persons were using the disabled restroom, often making the restroom inaccessible to him, and he also had brought up that persons without handicap placards were parking in handicapped spaces, making it difficult for the taxi to pick him up in the parking lot. Ogbogu also brought up that he was inappropriately getting attendance points, because he was being given points for absences that had been approved for intermittent FMLA leave in 2017.

23. After Ogbogu sent this complaint, the next two days St. George on multiple occasions walked up to his cubicle and stood there and stared at him for several minutes. On November 8, 2017, St. George asked Obugu if he was okay "now that I'm not sitting next to you," which was a reference to Ogbogu previously telling him that he was creating a toxic work environment.

24. On November 10, 2017, in a weekly one on one meeting, St. George told Ogbogu that he was going to lose his upcoming bonus. St. George said the reason was because Jonathan Treadway ("Treadway"), Supervisor (Caucasian), told him that he had seen Ogbogu on the telephone in the restroom. Ogbogu does not believe this occurred because he uses the handicapped stall with bars so that he can maintain his balance due to the fact he has a hard time standing up because of his physical disability. Ogbogu believes he received a written disciplinary action relating to this statement by Treadway.

25. That same day, Ogobu went to complain to Holliday that St. George was harassing him and had gotten other Supervisors to participate, but she did not take any action.

26. On January 2, 2018, Ogbogu requested further reasonable accommodations from Danita Castro ("Castro"), Employee Relations Lead-Individual Marketplace (African-American). Ogbogu asked for a slight extension of his lunch and break times due to needing extra time

to get to the lunchroom. He also asked for an additional five minutes of time after each phone call to type up his call notes.

27. On February 5, 2018, ER granted accommodations to allow Ogbogu to have an additional 10 minutes for lunch and an additional four minutes for breaks. He was also given 5 additional minutes to type his call notes and a one time per day use of his cell phone to talk to the dispatch company if used in the stairwell and only for 2-3 minutes.

28. After he requested the accommodation, St. George told Obogu that "we are watching you." Ogobu then started receiving a series of retaliatory write-ups. On February 14, 2018, Ogobu was given a written disciplinary action dated February 6, 2018, the day after his reasonable accommodation request was granted. The disciplinary action related to alleged improper cell phone use by Ogbogu on February 6, 2018, and was given by POD Manager Morrison and Marla Paul ("Paul"), Supervisor (Caucasian). After this write-up Obogu continued to have Supervisors closely scrutinizing him and following him when he would get up from his desk.

29. In approximately August 2018, employees in Ogbogu's departmentwere told that due to increased demand it had been determined that long term seasonal employees whose work had been extended due to growing business needs, would be getting permanent offer letters.

30. In the fall of 2018, after making further complaints to ER in 2018 about ongoing retaliation and a hostile work environment, Ogobu was subjected to a series of three further disciplinary actions. On October 3, 2018, a written warning was documented regarding an escalated customer call, and on that same day Ogobu was given a documented verbal disciplinary action for allegedly incorrectly logging time. These write-ups were given by POD Manager Morrison and/or Supervisor Paul. After Ogobu received these disciplinary

actions, Ogobu quit receiving monthly bonuses or received bonuses that were significantly decreased from what he usually received.

31. On November 13, 2018, co-workers of Ogbogu began receiving job offers for permanent positions. On November 14, 2018, Ogbogu was given a written warning dated November 13, 2018, alleging working of overtime without authorization by POD Manager Morrison and Supervisor Paul.

32. On November 18, 2018, Ogbogu complained to department management and ER that he was being subjected to retaliation for his request for reasonable accommodation so that it could be justified not giving him a raise and permanent employee status. In that complaint, Ogbogu refuted the alleged basis for the disciplinary actions that he received.

33. On December 12, 2018, Ogbogu was terminated by Emily Rapson ("Rapson"), ER Associate (Caucasian). Rapson told Ogbogu that the basis for the termination was budget cuts. However, all the other Benefit Advisors who had been seasonal workers since 2013 like Ogbogu, were given offer letters for permanent positions.

## ADA DISABILITY AND TITLE VII RACE DISCRIMINATION CLAIMS

34. Ogbogu is African-American and has a disability of cerebral palsy and is therefore is a member of a protected class within the meaning of the ADA and Title VII.

35. All conditions precedent to the filing of this suit have been met:

   A. On August 13, 2019, Ogbogu filed a charge of discrimination, Charge No. 450-2019-06154, with the Equal Employment Opportunity Commission ("EEOC") and TWC alleging disability, race, and retaliation discrimination;

   B. On January 25, 2021, Ogbogu received a Notice of Right to Sue from the EEOC.

36. Ogbogu alleges that WTW, through its employees and agents, engaged in a continuing course or discriminatory conduct against him because of disability, race, and/or in

retaliation for his opposition to discriminatory employment practices in violation of the ADA and Title VII, and specifically:

    A.  WTW subjected Ogbogu to less favorable working conditions than those to which non-disabled employees and non-African-American employees were subjected, including in failure to apply employee work rules policies equally; compensation through bonuses and raises; provision of disciplinary actions; and termination of Ogbogu's employment on December 12, 2018;

    B.  WTW denied Ogbogu reasonable accommodations requested for his disability, culminating in the termination of his employment on December 12, 2018;

    C.  WTW retaliated against Ogbogu for his opposition to its discriminatory employment practices, by terminating his employment on or December 12, 2018.

37. WTW engaged in the conduct described above with malice or reckless indifference to the ADA and Title VII employment rights of its employees including Ogbogu.

## FMLA CLAIM

38. Ogbogu incorporates by reference ¶13-33.

39. At all times material to this action, from on or about September 2013 until Ogbogu's termination on or about December 12, 2018, Ogbogu was a Benefits Advisor for WTW.

40. Throughout Ogbogu's employment WTW employed at least fifty employees and was an employer as that term is defined in FMLA.

41. At all times material herein, WTW was engaged in commerce or in the production of goods for commerce, or had employees engaged in commerce or in the production of goods for commerce.

42. Ogbogu submitted necessary documentation to WTW regarding a need for intermittent FMLA leave.

43. At the time Ogbogu requested and took FMLA leave, he was an eligible employee of WTW, as that term is defined in the FMLA, because he has a serious health condition,

cerebral palsy, and was employed by WTW for more than twelve months, working more than 1,250 hours before FMLA leave was requested.

44. WTW discriminated and/or retaliated against Ogbogu for exercise of his FMLA rights, specifically his taking FMLA leave, and/or unlawfully interfered with Ogbogu's right to take FMLA leave, in violation of the FMLA, 29 U.S.C. §2601, *et seq.*

   a. In or about early 2017, Ogbogu submitted necessary documentation to WTW regarding a need for FMLA leave and subsequently intermittently took such leave through the remainder or his employment. Through these actions, Ogbogu took time off work, and requested time off in the future, to care for a serious health condition as that term is defined in 29 U.S.C. § 2611(11). Through these actions, pursuant to 29 C.F.R. § 825.303(b), Ogbogu provided sufficient information to reasonably determine that FMLA leave applied to his request;

   b. On or about early November 18, 2018, Ogbogu submitted a formal written complaint to WTW that he was suffering discrimination and retaliation, and had been written up for not completing a task that he received by email when he was at a doctor's appointment utilizing intermittent FMLA leave;

   c. On December 12, 2018, Ogbogu was terminated;

   d. In terminating Ogbogu's employment and/or refusing to rehire or return him to work with similarly situated coworkers, WTW interfered with, restrained, or denied the exercise or attempted exercise of Ogbogu's right to take FMLA leave; retaliated against Ogbogu because he sought protection under the FMLA; and/or treated Ogbogu less favorably than employees who had not taken FMLA leave, requested FMA leave, and/or given notice of a need to take leave;

   e. WTW's conduct was in violation of 29 U.S.C. §2601, *et seq*., specifically, 29 U.S.C. §2615(a)(1), 29 U.S.C. § 2615(a)(2), and 29 U.S.C. § 2615(b).

**<u>42 U.S.C. § 1981 CLAIM</u>**

45. Ogbogu incorporates herein all the allegations of discrimination and retaliation listed in this Complaint.

46. Obgogu alleges that WTW discriminated against him in the making of a contract of employment, on the same terms it offered to non-African-American employees and/or employees that did not protest discrimination. Such refusal was undertaken for the purpose

of interfering with and avoiding the rights of Ogbogu and the contractual obligations of WTW in violation of 42 U.S.C. § 1981.

47. WTW's actions in discriminating and retaliating against Ogbogu, including terminating his employment, were intentional acts of racial discrimination in violation of 42 U.S.C. § 1981.

48. WTW's actions were undertaken for the specific purpose of interfering with and avoiding the contractual obligations of WTW and the contractual rights of Ogbogu, in violation of 42 U.S.C. § 1981.

49. Ogbogu has no plain or adequate remedy at law to correct the wrongs complained of herein, and has thus instituted this suit for damages, including compensatory and punitive damages, declaratory relief and injunctive relief provided for under the ADA, Title VII, as amended, the FMLA, and 42 U.S.C. § 1981. Further, Ogbogu is now suffering and will continue to suffer irreparable injury from WTW's policies, practices, customs, and usages, set forth herein.

## RELIEF REQUESTED

50. Ogbogu requests that this Court grant him the following relief from WTW:

A. A declaratory judgment against WTW, declaring its past practices herein complained of to be unlawful under the ADA, Title VII, the FMLA, and 42 U.S.C. § 1981;

B. A permanent injunction, enjoining WTW from continuing to discriminate against him on account of his race or disability, or in retaliation for complaints of discrimination, in violation of the ADA, Title VII, the FMLA, and 42 U.S.C. § 1981;

C. Backpay, front pay, retroactive seniority, pension benefits, bonus payments, health benefits, and any other relief necessary to compensate Ogbogu for damages under the ADA, Title VII, the FMLA, and 42 U.S.C. § 1981;

D. Compensatory and punitive damages for the violation of rights under the ADA, Title VII, and 42 U.S.C. § 1981 in the maximum amount prescribed by law;

E. Liquidated damages for WTW's willful violation of the FMLA;

F.  Implementation of a clear and effective grievance procedure for employment discrimination complaints with an effective non-retaliation provision and advisement to all employees who are disabled and African-American at WTW of such grievance and non-retaliation provisions;

G.  Attorney fees from WTW for the prosecution of his ADA, Title VII, FMLA, and 42 U.S.C. § 1981 claims;

H.  Costs for the prosecution of the ADA, Title VII, FMLA and 42 U.S.C. § 1981 claims, including the cost of expert witness fees;

I.  Pre-judgment interest at the legally prescribed rate from the date of the violations until judgment as well as post-judgment interest as applicable;

J.   Such other general relief to which Ogbogu is justly entitled.

## <u>JURY DEMAND</u>

51. Ogbogu demands a jury on all ADA, Title VII, FMLA, and 42 U.S.C. § 1981 claims, specifically, the ultimate issues of fact as to the merits of the dispute, backpay, frontpay, employee benefits, and compensatory and punitive damages, excepting the attorneys' fees issues.

Respectfully Submitted,


/s/ Jane Legler
Jane Legler
Texas Bar No. 03565820
Christine Neill
Texas Bar No. 00796793
Kyla Gail Cole
Texas Bar No. 24033113

Neill Legler Cole PLLC
3141 Hood Street, Ste. 200
(214) 748-7777
(214) 748-7778 (facsimiles)
christine@nlcemployeelaw.com
jane@nlcemployeelaw.com
kyla@nlcemployeelaw.com

Attorneys for Plaintiff